UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

ANDRE L. JONES,

        Plaintiff,

    v.                                                                    25-CV-6083-FPG
                                                                                ORDER
MONROE COUNTY JAIL;
DEPUTY DALTON TYLER NIEDIRT;
JOHN/JANE DOE, Primecare Nurse
Administrator;
JOHN/JANE DOE, Food Administrator;
MONROE COUNTY JAIL,[1]

        Defendants.

_____

*Pro se* Plaintiff, Andre L. Jones, a prisoner confined at the Livingston County Jail filed this action seeking relief under 42 U.S.C. § 1983. He alleged deliberate indifference arising from an allergic reaction and seizure after being served eggs at the Monroe County Jail ("MCJ"). ECF No. 1, 8.[2]

The Court previously granted Plaintiff permission to proceed *in forma pauperis* and screened the complaint and supplement pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A. The Court (1) permitted Plaintiff's deliberate indifference claim against Deputy Niedert ("Niedert") to proceed, (2) dismissed the claims against MCJ with prejudice, and (3) permitted Plaintiff leave to amend his claims against Monroe County and to amend his claims alleging deliberate indifference based on being served eggs despite his documented allergies and the failure to take Plaintiff to an

_____

[1] The Clerk of Court is directed to amend the caption as set forth above. The Court notes that it appears that there is only one Deputy Sheriff sued, "Dalton Tyler Niedert." ECF No. 14 at 1, 2.

[2] Plaintiff had filed both a complaint, ECF No. 1, and amended complaint, ECF No. 8. Because Plaintiff is *pro se* and because the allegations in the amended complaint, ECF No. 8, largely matched those in the complaint, the Court treated the amended complaint as a supplement to the original complaint. ECF No. 12 at 1 & n.2.

outside hospital to check for a concussion. ECF No. 12 at 8-12[3] (the "initial screening order"). Plaintiff timely filed two amended complaints. ECF Nos. 14 ("AC I") and 15 ("AC II"). AC II simply supplements the allegations of AC I, *viz.*, Niedert failed to assist him after his allergic reaction to the eggs and Defendant PrimeCare John/Jane Doe Nurse Administrator failed to properly treat his allergic reaction, ECF No. 15 at 5. AC II therefore is construed as a supplement to AC I.

AC I also adds a *new* claim to this action that was not pleaded in the original complaint or its supplement, *i.e.*, Plaintiff was provided with someone else's medication on January 29, 2025, ECF No. 14 at 5-6, but such claim was raised in a separate action Plaintiff filed contemporaneously with this action, *Jones v. Monroe County Jail-Medial*, 25-CV-6084-FPG ("*Jones II*"). The Court screened the complaint in *Jones II* and found that Plaintiff failed to allege that the nurse who provided Plaintiff with someone else's medication was deliberately indifferent. *Jones II*, 25-CV-6084, ECF No. 13 at 7-8 (W.D.N.Y. Sept. 9, 2025). The Court granted Plaintiff leave to amend that claim but because Plaintiff did not file an amended complaint by the date directed, Judgment was entered dismissing the case with prejudice and it was closed. *Jones II*, 25-CV-6084, ECF No. 14 (W.D.N.Y. Sept. 9, 2025). Whether the new claim asserted in AC I was intended to be included within this action or was intended to be an amended complaint in *Jones II* is unknown. Because the new claim raised in AC I and initially raised in *Jones II* are the same claim and because Plaintiff did not file an amended complaint in Jones II as permitted, the Court grants Plaintiff leave to amend this action *nunc pro tunc* to add the January 29, 2025 incident claim to this action. *See* Fed. R. Civ. P. 15(a) ("The court should freely give leave to amend when justice so requires.")

---

[3] Page references to docket entries are to the numbering automatically generated by CM/ECF, which appears in the header of each page.

The Court now screens AC I, ECF No. 14, and AC II, ECF No. 15, using the 28 U.S.C. § 1915(e)(2)(B) and 1915A criteria, ECF No. 12 at 2-4,[4] and rules as follows: (1) the deliberate indifference claim against Niedert based on his conduct following Plaintiff's allergic reaction on December 7, 2024, may proceed to service as ruled previously in the initial screening order; (2) the deliberate indifference claim against John/Jane Doe MCJ Food Administrator based on giving Plaintiff eggs on his breakfast tray on December 7, 2024, may proceed to service, once identified; (3) the deliberate indifference claim against John/Jane Doe, PrimeCare Nurse Administrator or Doctor who treated Plaintiff after his allergic reaction on December 7, 2024, is dismissed without leave to amend because it fails to state a claim for relief; (4) the deliberate indifference claim against John/Jane Doe PrimeCare Nurse Administrator based on giving Plaintiff the wrong medication on January 29, 2025 is dismissed without leave to amend because it fails to state a claim for relief; and (5) the claims against Monroe County are dismissed without leave to amend because they fail to state claims upon which relief can be granted.

## DISCUSSION

### I.    Legal Standards

#### A.    Review Under the IFP Statutes

A court shall dismiss a complaint or amended complaint in a civil action in which a prisoner seeks redress from a governmental entity, or an officer or employee of a governmental entity, if the court determines the action "(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b)(1)-(2); *see* 28 U.S.C. § 1915(e)(2)(B) (setting forth the same criteria for dismissal where a plaintiff is proceeding *in forma pauperis*).

---

[4] Familiarity with the initial screening orders in this action, ECF No. 12, and *Jones II*, ECF No. 13, is presumed.

B.      **Pleading Standards**

In evaluating a complaint, a court must "accept all of the facts alleged in the complaint as true and draw all inferences in the plaintiff's favor." *Larkin v. Savage*, 318 F.3d 138, 139 (2d Cir. 2003); *King v. Simpson*, 189 F.3d 284, 287 (2d Cir. 1999). Although "a court is obliged to construe [*pro se*] pleadings liberally, particularly when they allege civil rights violations," *McEachin v. McGuinnis*, 357 F.3d 197, 200 (2d Cir. 2004), even a *pro se* complaint must comply with Rule 8 of the Federal Rules of Civil Procedure, which requires a complaint to make "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A complaint states a claim for relief if the claim is "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

A claim will have "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In other words, although a *pro se* complaint need not provide every last detail in support of a claim, it must allege sufficient factual allegations to nudge the claim "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. *See Komatsu v. Cubesmart, Daniels Norelli Cecere & Tavel PC*, No. 20-3676-CV, 2021 WL 6060603, at *1 (2d Cir. Dec. 20, 2021) (summary order) (to avoid *sua sponte* dismissal under the IFP statute, "a complaint must plead 'enough facts to state a claim to relief that is plausible on its face'" (quoting Twombly, 550 U.S. at 570)); *Scott Phillip Lewis v. R.L. Vallee, Inc., d.b.a. Maplefield's*, No. 24-1438, 2025 WL 1077412, at *1 (2d Cir. Apr. 10, 2025) (summary order) (same).

The Court's liberal pleading standard "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). A complaint fails to state a claim if it supplies

4

only "labels and conclusions," *Twombly*, 550 U.S. at 555, "a formulaic recitation of the elements of a cause of action," *id.*, or "'naked assertions' devoid of 'further factual enhancement,'" *Iqbal*, 556 U.S. at 678 (alteration omitted) (quoting *Twombly*, 550 U.S. at 557). Although a court is "obligated to draw the most favorable inferences that [a plaintiff]'s complaint supports, [it] cannot invent factual allegations that he [or she] has not pled." *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010).

### C.    Section 1983 Claims

"To state a valid claim under 42 U.S.C. § 1983, the plaintiff must allege that the challenged conduct (1) was attributable to a person acting under color of state law, and (2) deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States." *Whalen v. County of Fulton*, 126 F.3d 400, 405 (2d Cir. 1997). "Section 1983 itself creates no substantive rights; it provides only a procedure for redress for the deprivation of rights established elsewhere." *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993) (citing *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 816 (1985)).

To establish liability against an official under § 1983, a plaintiff must allege that individual's personal involvement in the alleged constitutional violation; it is not enough to assert that the defendant is a link in the chain of command. *See McKenna v. Wright*, 386 F.3d 432, 437 (2d Cir. 2004). Moreover, the theory of *respondeat superior* is not available in a § 1983 action. *See Hernandez v. Keane*, 341 F.3d at 137, 144 (2d Cir. 2003). There is "no special rule for supervisory liability." *Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020). Rather, "a plaintiff must plead and prove 'that each Government-official defendant, through the official's own individual actions, has violated the Constitution.'" *Id.* (quoting *Iqbal*, 556 U.S. at 676).

5

## II.    Allegations[5]

### A.    Allergic reaction on December 7, 2024

Plaintiff was a pretrial detainee at MCJ.  On December 7, 2024, he exited his cell for breakfast and grabbed his "diet" tray from the officer's station. ECF No. 14 at 5, 10.[6] He began to eat his breakfast and suffered an allergic reaction because eggs had been placed on his tray. *Id.* He recalls next that several deputies were standing over him with medical personnel. *Id.* He suffered a seizure, hives, and a contusion to the back of his head from falling. *Id.* He was given smelling salts to revive him and taken to medical observation, where he was seen by the PrimeCare "doctor/nurse John/Jane Doe," ECF No. 15 at 5 (citation modified), who gave him Benadryl for hives and Tylenol for his headache.  ECF No. 14 at 5; ECF No. 15 at 5.  He alleges he was not "properly examined" before being sent back to his housing unit where he "suffered from dizzy spells and blackouts due to hitting [his] head on the floor." ECF No. 15 at 5.[7]

Plaintiff has several established allergies to certain foods—including eggs, tomatoes, onions, and fish—which were known by food administration at MCJ. *Id.* at 14; ECF No. 15 at 4, 13 (Grievance Response, December 15, 2024: "Jones does have a medical diet stating his tray should [contain] no fish, eggs, tomatoes, or onions") (citation modified).  He has been in-and-out of MCJ for over 38 years and his allergies to eggs and other foods should have been well

---

[5] The Court accepts Plaintiff's allegations as true for purposes of screening AC I and AC II.

[6] ECF No. 14 at 10-12 and ECF No. 15 at 14-16 are identical copies of the grievance Plaintiff submitted regarding this incident.  It also was attached to the original complaint and supplement, ECF No. 1 at 14; ECF No. 8 at 11, and considered as part of Plaintiff's allegations for purposes of the initial screening order. ECF No. 12 at 5 n.6. The Court thus deems the grievance and other exhibits attached to AC I and AC II part of the pleadings and considers them in its screening decision. *Cooper v. Dennison*, No. 08-CV-6238 CJS, 2011 WL 1118685, at *1 (W.D.N.Y. March 24, 2011) (in ruling on a 12(b)(6) motion to dismiss, "[d]ocuments that are attached to the complaint or incorporated in it by reference are deemed part of the pleading and may be considered.").

[7] The original complaint also alleged that Plaintiff "was not taken to an outside area hospital to rule out a concussion from hitting his head hard on the floor." ECF No. 1 at 5 (citation modified).

documented. ECF No. 14 at 10. During this recent detention at MCJ, he had complained to the deputies "on numerous occasions" about his allergies and the kitchen frequently disregarding his complaints and placing these foods on his trays. *Id.* On one occasion—just a few days before his allergic reaction—he complained to Deputy Bailey that eggs were on his diet tray, despite his diet sticker clearly stating, "NO EGGS." *Id.* Plaintiff was subsequently told that the kitchen supervisor said that he had no such record on file about Plaintiff's allergies, which Plaintiff found "odd" because of all his prior detentions at MCJ. *Id.* On the day of his allergic reaction, the kitchen supervisor "negligent[ly]" allowed Plaintiff's tray to leave the kitchen without verifying that there were no eggs on it. *Id.* at 5.

In response to his allergic reaction and fall, Plaintiff alleges that Niedert "failed to assist [him] in aid [sic] and made false claims that [Plaintiff] was faking and needed to stop and get up." *Id.* (citation modified)*;* ECF No. 15 at 5 ("stop faking and get up"). Niedert "showed no concern for [Plaintiff's] safety" and when another inmate came to his aid, Niedert ordered that inmate to "lock in his cell." ECF No. 15 at 5.

### B.  Provided wrong medication on January 29, 2025

Plaintiff alleges that on January 29, 2025, a nurse was conducting a medication pass on 3 North. He was in front of the nurse and she asked his last name, and she gave him a medical cup with medication. ECF No. 14 at 6. He took the pills, a deputy did a mouth check, and Plaintiff walked away. *Id.* A few minutes later, he was called back to the medication cart, and the nurse told him that she gave him someone else's medication. *Id.* Later that night, Plaintiff suffered chest pains and a seizure. *Id.* He was taken to an outside hospital. *Id.* His workup was "unremarkable including normal blood work, CT head and EKG." *Id.* at 9 (University of Rochester ("UR") "After

Visit Summary"). It was recommended that he restart Keppra and follow up with neurology. *Id.*

Since then, he has had numerous visits to UR Neurology. *Id.*

III.   **Analysis[8]**

A.   **Deliberate Indifference Claims**

As the Court explained in the initial screening order, Plaintiff's allegations of deliberate indifference are analyzed under the Fourteenth Amendment's Due Process Clause because it appeared that Plaintiff was a pretrial detainee at MCJ. ECF No. 12 at 7 (citing *Darnell v. Pineiro*, 849 F.3d 17, 29 (2d Cir. 2017). A claim of deliberate indifference under the Fourteenth Amendment requires a pretrial detainee to allege both an objective and subjective element. The objective element or prong requires the existence of a "serious medical need" and the subjective elements requires a showing that defendants "acted with deliberate indifference to such needs." *Charles v. Orange County*, 925 F.3d 73, 86 (2d Cir. 2019) (citations omitted); *see also* ECF No. 12 at 7-8 (setting forth pleading requirements of a Fourteenth Amendment deliberate indifference claim).

1.   Meals and Allergies: December 7, 2024 Incident

The Court previously found that Plaintiff's allergies were sufficiently serious and that while the original complaint's allegations could support a claim that the December 7, 2024 incident "was more than negligence" because "Plaintiff allege[d] he had informed deputies and kitchen staff of his allergies and prior incidents of receiving the wrong food," Plaintiff did not "name[] any individual defendant or allege[] how any individual deputy or staff member . . . was personally involved in this incident." ECF No. 12 at 9. The Court therefore granted Plaintiff leave to amend this claim to name a specific defendant who was personally involved in providing Plaintiff the

---

[8] The Court found previously that the Fourteenth Amendment Due Process Deliberate Indifference claim against Niedert could proceed to service, ECF No. 12 at 9-10, and therefore this claim is not addressed further.

wrong food on December 7, 2024, and how that defendant "acted recklessly or otherwise knew or should have known that serving eggs to Plaintiff would pose a substantial risk to his health." *Id.*

Plaintiff names as a defendant, John/Jane Doe Food Administrator, and alleges the "kitchen supervisor . . . negligent[ly] allow[ed] allergenic foods to leave the kitchen on [his] tray without verification which caused [him] to ingest said foods and suffer a seizure" and get hives. ECF No. 14 at 5 (citation modified). Plaintiff also alleges that after other recent incidents of being served the wrong food, he complained to the deputies on numerous occasions but "the kitchen kept disregarding [his] complaints and putting [the items he cannot eat] . . . on [his] tray." *Id.* at 10. He was told repeatedly that the issue was "taken care of" and that the kitchen supervisor "said they had no such record on file concerning [his] food allergies." *Id.* Plaintiff's grievance regarding the December 7, 2024 was upheld in part to the extent that Plaintiff "does have a medical diet stating his tray should [contain] no fish, eggs, tomatoes, or onions." *Id.* at 13 (citation modified).

At this stage of the litigation and mindful of the Second Circuit's directives to construe *pro se* pleadings liberally, the Court finds that this claim against John/Jane Doe Food Administrator may proceed to service. Plaintiff alleges that he had been served foods that he was allergic to prior to the December 7, 2024 incident, that he had complained about it on numerous occasions, and that the kitchen supervisor had claimed there was no record of Plaintiff's food allergies, which was incorrect. It thus can be reasonably inferred that the Food Administrator was aware of Plaintiff's food allergies or at least should have been aware of them and failed to ensure Plaintiff was not served eggs or the other foods he was allergic to and there was a record of this on file. *Cf. Reynolds v. Arnone*, No. 3:13-CV-1465 (SRU), 2025 WL 974843, at *39 (D. Conn. Mar. 31, 2025) ("Deliberately indifferent conduct frequently involves an omission. *Tangreti*, of course, did not abrogate officials' liability for deliberate indifference—especially because *Tangreti* itself

9

concerned a deliberate indifference claim. Instead, *Tangreti* held that an official with a supervisory role could be held liable for deliberate indifference if she herself 'personally knew of and disregarded an excessive risk to [the plaintiff's] health and safety.'" (quoting *Tangreti v. Bachmann*, 983 F.3d 609. 619 (2d Cir. 2020)).

Accordingly, this claim may proceed against John/Jane Doe, MCJ's Food Administrator as of December 7, 2024, once identified in accordance with *Valentin v. Dinkins*, 121 F.3d 72, 77 (2d Cir. 1997).[9]

### 2.    Failure to Properly Treat Plaintiff Following Allergic Reaction

Following his allergic reaction and fall, Plaintiff alleges that he was seen by a doctor or nurse and given Benadryl and Tylenol by a doctor or nurse but that he was sent back to his unit without a proper examination where he "suffered from dizzy spells and blackouts due to hitting his head." ECF No. 15 at 5-6; *see also supra* at n.6 (the original complaint alleged that Plaintiff was not taken to an area hospital to check for a possible concussion.) Plaintiff names only PrimeCare Nurse Administration John/Jane Doe. ECF No. 14 at 1; ECF No. 15 at 1.

As set forth in the initial screening order, "[i]t is well-established that mere disagreement over the proper treatment does not create a constitutional claim[,]" and that "negligence, even if it constitutes medical malpractice, does not without more, engender a constitutional claim." *Chance v. Armstrong*, 143 F.3d 698, 703 (2d Cir. 1998) (addressing a prisoner's deliberate indifference claim under Eighth Amendment); *see, e.g.*, *Laurent v. Edwin*, 528 F. Supp. 3d 69, 87 (E.D.N.Y. Mar. 25, 2021) (stating that under the due process clause "[a] claim based on an inmate's

---

[9] The Court makes no determination regarding whether this claim or any other claim proceeding to service may survive a properly supported motion to dismiss or summary judgment. *See Sawyer v. New York State Dept. of Corr. Servs.*, 11-CV-152S F, 2015 WL 6641471, at *4 (W.D.N.Y. Oct. 28, 2015) (a court's initial screening pursuant to § 1915(e) and/or § 1915A does not preclude a later dismissal of that complaint under Fed. R. Civ. P. 12(b)(6)); *Cusamano v. Sobek*, 604 F. Supp. 2d 416, 435 n. 29 (N.D.N.Y. 2009) (same).

disagreement with the defendant's medical judgment as to the proper course of treatment cannot support a constitutional claim for deliberate indifference.") (citation modified). "[I]t is generally understood that the ultimate decision of whether or not to administer a treatment or medication is a medical judgment that, without more, does not amount to deliberate indifference." *Laurent*, 528 F. Supp. 3d at 87 (citation modified); *see, e.g., Smalls v. Wright*, 807 F. App'x 124, 126 (2d Cir. 2020) (summary order) (finding that "decisions not to order an MRI and not to refer [plaintiff] to a specialist constitute matters of medical judgment that do not give rise to [a constitutional] violation"). Further, there is no indication that the doctor or nurse who treated him initially were aware of the dizzy spells or blackouts Plaintiff later suffered and that they failed to act.

Even if the Court were to construe AC I and AC II as alleging a claim against the doctor or nurse who treated him and sent him back to his unit following the reaction and fall, there simply are no allegations to support a claim of deliberate indifference against that doctor or nurse. Based on the pleadings, the decision not to take Plaintiff to an area hospital or properly treat his contusion was a medical decision that does not give rise to deliberate indifference. This claim therefore is dismissed.

### 3.    Wrong Medication: January 29, 2025 Incident

Plaintiff alleges that he was given the wrong medication by a nurse at MCJ and that he suffered chest pains and a seizure. ECF No. 15 at 6. He was seen at a local hospital and has had several visits to UR neurology. While the Court again finds—as it did in *Jones II's* initial screening order, ECF No. 13 at 7—that chest pains and a seizure following the ingestion of the wrong medication alleges a sufficient serious medical condition, there simply are no allegations that the nurse or anyone was deliberately indifferent.

11

"Despite the slightly lower standard articulated in *Darnell*, which is akin to objective recklessness, any § 1983 claim for a violation of due process requires proof of a mens rea greater than mere negligence." *Dumel v. Westchester County*, No. 19-CV-2161 (KMK), 2021 WL 738365, at *9 (S.D.N.Y. Feb. 25, 2021) (citation modified). "A detainee must prove that an official acted intentionally or recklessly, and not merely negligently." *Darnell*, 849 F.3d at 36.

Here, Plaintiff alleges—at most—that the nurse made an error and this cannot support a constitutional claim. *See, e.g.*, *Johnson v. Connecticut*, Case No. 3:24-CV-1392 (OAW); 2025 WL 2452515, at *3 (D. Conn. Aug. 26, 2025) ("Case law . . . illustrates that Nurse Day's alleged conduct—mistakenly providing Plaintiff with another inmate's medication—even if presumed true, likely would be negligent but, without more, it would not rise to the level of deliberate indifference."); *Damon v. State of New York*, No. 8:23-CV-74 (GLS/CFH), 2023 WL 11965130, at *13-14 (N.D.N.Y. Mar. 28, 2023) (dismissing Fourteenth Amendment deliberate claim where the plaintiff was given the wrong medication and defendants treated him properly following a reaction to the wrong medication), *report and recommendation adopted*, 2023 WL 11965128 (N.D.N.Y. Apr. 24, 2023); *cf. Revels v. Corr. Med. Care, Inc.*, No. 17-CV-88 (MAD/TWD), 2022 WL 1224407, at *9 (N.D.N.Y. Apr. 26, 2022) ("Cases have consistently held that the mistaken/negligent administration of incorrect medication is insufficient to support a claim of deliberate indifference under the Eighth Amendment." (collecting cases)); *Long v. Lafko*, 254 F. Supp. 2d 444, 447 (S.D.N.Y. 2003) (dismissing deliberate indifference claim based on medication error where the defendant's conduct was "merely negligent or unprofessional in failing to check the medication before administering it").

Here, there are simply no allegations that the nurse was anything more than negligent when she gave Plaintiff the wrong medication on her medication run. As explained above, this does not

12

support a violation of due process. This claim thus is dismissed and leave to amend again is denied because it is futile. Plaintiff previously was granted leave to amend this claim in *Jones II*, and he fails to allege a plausible claim after being advised of the deficiencies in the original complaint. *See, e.g., Ward v. City of New York*, 777 F. App'x 540 (2d Cir. 2019) (summary order) (affirming district court's denial of leave to amend because leave to amend a second time not required when the first amended complaint does not cure deficiencies that the court identified in its order to amend).

### B.    Monroe County: *Monell* Liability

Plaintiff initially sued MCJ and the Court dismissed MCJ as a defendant because it is merely an arm of Monroe County and thus could not be sued. ECF No. 12 at 6-7. The Court, however, construed the claims as being brought against Monroe County but dismissed the claims against the County under the holding of *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 694 (1978), because there were no allegations suggesting that "an official policy of Monroe County led to or caused the alleged constitutional violations [alleged]." *Id.* at 7.

The allegations in AC I and AC II fare no better. The only reference to a policy of Monroe County that led to or caused Plaintiff's being served eggs is that "[t]he blanket policy to give every incarcerated individual the same meal poses a serious risk to people with allergies. This policy is one that Monroe County should have foreseen could and would put someone like me at risk." ECF No. 15 at 4. However, Plaintiff's other allegations belie that all inmates are given the same food. He alleges—more than once—that he was given a "diet tray" and that the day of the allergic reaction at issue he picked up his diet tray at the officer's station. ECF No. 14 at 10; ECF No. 15 at 14. "It is well established that, where a plaintiff's own pleadings are internally inconsistent, a court is neither obligated to reconcile nor accept the contradictory allegations in the pleadings as

13

true in deciding a motion to dismiss." *Pierce v. Fordham University, Inc.*, No. 15-CV-4589, 2016 WL 3093994, at *2 n.1 (S.D.N.Y. June 1, 2016), *aff'd*, 692 F. App'x 644 (2d Cir. 2017); *see, e.g., Palm Beach Strategic Income, LP v. Salzman, P.C.*, No. 10-CV-261, 2011 WL 1655575, at *5-7 (E.D.N.Y. May 2, 2011) (declining to accept plaintiff's new allegations that conflicted with those in three previous versions of plaintiff's complaint and granting defendant's motion to dismiss), *aff'd*, 457 F. App'x 40 (2d Cir. 2012).

Because it clearly appears that Plaintiff received a separate diet tray on December 7, 2024—which would have been inconsistent with the policy Plaintiff relies on to establish the County's liability for his allergic reaction—the Court finds that Plaintiff fails to plausibly alleged a claim that a policy of the County led to or caused his allergic reaction on December 7, 2024. The claim against the County therefore is dismissed without leave to amend. *See, e.g., Ward*, 777 F. App'x at 544 (affirming district court's denial of leave to amend because leave to amend a second time not required when the first amended complaint does not cure deficiencies that the court identified in its order to amend).

## CONCLUSION

For the reasons set forth above, Plaintiff is granted leave to amend *nunc pro tunc* to add the claim arising on January 29, 2025 to this action. Plaintiff's deliberate indifference claims alleging the denial of follow up care following the December 7, 2024 allergic reaction, his claims against Monroe County, and his deliberate indifference claim alleging that he was given the wrong medication on January 29, 2025 are dismissed with prejudice. Plaintiff's deliberate indifference claim against Deputy Niedert and his deliberate indifference claim against John/Jane Doe, Food Administrator may proceed to service.

## ORDER

In light of the above,

IT HEREBY IS ORDERED that Plaintiff is granted leave to amend *nunc pro tunc* and the claim arising on January 29, 2025 is added to this action; and it is further

ORDERED that Plaintiff's deliberate indifference claim alleging the denial of follow up care following the December 7, 2024 allergic reaction, his claims against Monroe County, and his deliberate indifference claim alleging that he was given the wrong medication on January 29, 2025 are dismissed with prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1) because they fail to state claims on which relief can be granted; and it is further

ORDERED that the Clerk of Court shall terminate all defendants, except Deputy Niedert and John/Jane Doe, Food Administrator, from the caption of this action; and it is further

ORDERED that the Clerk of the Court shall cause the United States Marshals Service to serve copies of the summons, both amended complaints, ECF Nos. 14 and 15, and this Order upon Defendants Deputy Niedert and John/Jane Doe, Food Administrator, once identified, without Plaintiff's payment therefor, unpaid fees to be recoverable if this action terminates by monetary award in Plaintiff's favor; and it is further

ORDERED that pursuant to *Valentin v. Dinkins*, 121 F.3d 72 (2d Cir. 1997), the Monroe County Attorney's Office is requested to ascertain the full name, with correct spelling, and last known service address of Deputy Niedert and the MCJ Food Administrator on December 7, 2024, within 30 days of the date of this order. The County Attorney need not undertake to defend or indemnify these individuals at this time. Rather, this Order merely provides a means by which Plaintiff may name and properly serve these individuals, as instructed by the Second Circuit in *Valentin*.

15

The County Attorney shall produce the information specified above within 30 days of the date of this Order by mail to the *Pro Se* Litigation Unit, United States District Court, Robert H. Jackson United States Courthouse, 2 Niagara Square, Buffalo, New York 14202. Upon receipt of this information, the Clerk of Court shall amend the caption of this action to reflect the full names of these Defendants; and it is further

ORDERED that the Clerk of Court shall forward a copy of this order and the two amended complaints, ECF Nos. 14 and 15, by email to Deputy County Attorney Adam Clark at adamclark@monroecounty.gov; and it is further

ORDERED that, upon service, pursuant to 42 U.S.C. § 1997e(g)(2), Deputy Niedert and John/Jane Doe, Food Administrator shall answer or respond to the remaining claims of the amended complaints ECF No. 14 and 15; and it is further

ORDERED that pursuant to Western District of New York Local Rule of Civil Procedure 5.2(d), Plaintiff must immediately notify the Court in writing each time his address changes. Failure to do so may result in dismissal of the action with prejudice.

IT IS SO ORDERED.

Dated:    April 2\9 2026
          Rochester, New York

_____
HON. FRANK P. GERACI, JR.
United States District Court
Western District of New York

16